UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

G.C. and J.C. by their next friend and
Mother Angela Tsiang,

         Plaintiffs,

v.

South Washington County School District
833 and Dr. Keith Jacobus, Superintendent
of the South County Washington School
833,

         Defendants.

Case No. 17-cv-3680 (DSD/TNL)

ORDER

---

John J. E. Markham, II, Markham & Read, One Commercial Wharf West, Boston, MA 02110 (for Plaintiffs); and

John P. Edison & Michael J. Waldspurger, Rupp, Anderson, Squires, and Waldspurger, 333 South Seventh Street, Suite 2800, Minneapolis, MN 55402 (for Defendants);

---

This matter is before the Court on Defendants' Motion for Payment of Experts' Fees and Sanctions. (ECF No. 109). For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND

On August 11, 2017, Plaintiffs filed suit against Defendants South Washington County School District 833 and Dr. Keith Jacobus, alleging that they have violated Plaintiffs' rights under the Americans with Disabilities Act ("ADA").[1] (ECF No. 1).

---

[1] Plaintiffs filed an amended complaint on September 5, 2017. (ECF No. 12).

1

Plaintiffs allege that G.C., a student at South Washington County District 833 has a condition known as Electromagnetic Hypersensitivity Syndrome ("EHS"). Am. Compl., ¶ 2. Plaintiffs contend this condition causes G.C. headaches, memory and concentration difficulties, fatigue, stress, digestive problems, and skin symptoms. *Id*. ¶ 3. They allege that Defendants have failed to provide a meaningful accommodation to G.C. so that he may continue to "partake in the full enjoyment of the services, facilities, privileges, and advantages" offered by his school. *Id*. at ¶¶ 39-40. Plaintiffs seek, among other things, injunctive relief and costs and attorney's fees.

The parties have retained experts to prepare reports and testify in this litigation. Defendants have retained Drs. Kenneth Foster and Joseph Rasimas. (ECF Nos. 112 & 115). Plaintiffs have retained Drs. Gunnar Heuser and Toril Jelter. (ECF No. 127, p. 1; ECF No. 113-1, p. 61, 66). The parties have deposed each other's experts.

Before Plaintiffs deposed Defendants' experts, counsel for Defendants informed Plaintiffs that Defendants would require pre-payment of their fees before being deposed, unless Plaintiffs' counsel agreed to take responsibility for the fees. (ECF No. 113-1, p. 11). Plaintiffs' counsel informed Defendants to direct their experts' invoice to their law office. (*Id.*). Plaintiffs then took the deposition of Defendants' experts on July 9 and 10, 2018. (ECF No. 112-1; ECF No. 115-1).

On July 26, 2018, Dr. Foster submitted an invoice of $3,600 for his deposition, which included six hours of preparation time and three hours of deposition time. (ECF No. 115-1). On August 26, 2018, Dr. Rasimas submitted invoices totaling $5,191 for his deposition, which included four hours of preparation time, four hours of deposition time,

two and a half hours for deposition transcript review and errata submission, and parking. (ECF No. 112-1). Defendants submitted these invoices to Plaintiffs' counsel on August 2, 2018 and September 5, 2018, respectively. (ECF No. 113-1, p. 19).

Defendants scheduled the deposition of Dr. Heuser for June 21, 2018. (ECF No. 114, p. 1). The parties subsequently rescheduled the deposition for July 13 and then August 2, 2018, after Dr. Heuser suffered a heart attack. (ECF No. 114, p. 1). His deposition took place in Sacramento, California. (ECF No. 114, p. 2).

The parties agree that the deposition of Dr. Heuser did not go well. Dr. Heuser could not recall several facts regarding previous testimony or his prior interactions with counsel in this matter, and he could not identify whether certain images in his report were the same as those referenced by a radiologist. (ECF No. 121, pp. 2-3). A review of the transcript and Dr. Heuser's report also shows that his findings were inconsistent with the sources he relied on in his report and that he disregarded information that contradicted his report. For example, Dr. Heuser concluded that G.C. had mast cell activation, despite the fact that a biopsy had found otherwise. (ECF No. 98-1, p. 115). Dr. Heuser chose not to include or even reference that biopsy in his report, but, contended that he was not aware whether the biopsy was done correctly (*Id.*).[2] Defendants claim to have found approximately 40 different instances where Dr. Heuser admitted that he was unaware of where certain items came from in his report, that certain items were selected at Plaintiffs' urging, or that his report was inconsistent with his testimony. (ECF No. 98-8, p. 140-42). Approximately

---

[2] In fact, Plaintiffs' counsel indicated at the hearing that Dr. Heuser's diagnosis was based only a review of photographs of G.C.'s hands.

three weeks after his deposition took place, Plaintiffs indicated they would withdraw Dr. Heuser as an expert because he was too ill to continue in the lawsuit. (ECF No. 120, p. 7). Dr. Heuser subsequently submitted a bill of $4,500 for his deposition testimony. (ECF No. 113-1, p. 62).

On October 3, 2018, Defendants notified Plaintiffs they had not received payment for either of their expert's depositions yet. (ECF No. 113-1, p. 19). Defendants followed up with a second request for payment on October 10, 2018, after Plaintiffs did not respond. (ECF No. 113-1, p. 21). In response, Plaintiffs asked that Defendants provide declarations from each expert detailing the type of preparation time they spent on their depositions. (ECF No. 113-1, p. 30). Defendants submitted a declaration from Dr. Foster on November 1, 2018. (ECF No. 113-1, pp. 35-36). Defendants indicated that they would not submit a declaration for Dr. Rasimas because counsel for Plaintiffs did not identify any specific concerns with his invoice. (ECF No. 113-1, p. 34).[3]

Plaintiffs did not respond until November 28, 2018, after Defendants requested yet another update as to the status of payment. (ECF No. 113-1, pp. 42-43). At that time, they only asked that Defendants resend Dr. Foster's declaration. (ECF No. 113-1 at 42). A few days later they informed Defendants that they would submit a partial payment for their experts' depositions. (ECF No. 113-1, p. 48). They also indicated that they would pay the remainder once Defendants paid Dr. Heuser for his deposition time (ECF No. 113-1, p. 48). In response, Defendants indicated that they would not pay Dr. Heuser's fees, stating

---

[3] Dr. Rasimas did submit a declaration later in support of this motion. (ECF No. 112).

4

that his fees were not justified given the issues that they identified with his testimony and report. (ECF No, 113-1, pp. 52-53).

Defendants have now filed a motion seeking: (1) payment of their expert fees in full; (2) an order stating they are not required to pay any fee associated with Dr. Heuser's deposition (3) reimbursement of all costs and fees associated with the deposition of Dr. Heuser; and (4) reimbursement of all costs and fees associated with bringing this motion. (ECF No. 109). Plaintiffs filed a memorandum of law in response. (ECF No. 118). The Court heard argument on this matter on January 2, 2019. At that hearing, Plaintiffs' counsel indicated that it had been a tactical decision to withhold the remainder of Defendants' expert fees, in the hopes of convincing Defendants to compensate Dr. Heuser. The parties then submitted supplemental briefing on the issue of Dr. Heuser's testimony. The Court took this matter under advisement after receipt of that briefing.

## II. ANALYSIS

### A. Motion to Compel Payment of Defendants' Expert Fees

Defendants first move to compel full payment of their two expert witnesses. The Federal Rules of Civil Procedure require a party seeking discovery from the other side's expert to "pay the expert a reasonable fee for time spent in responding to discovery," unless a "manifest injustice would result." Fed. R. Civ. P. 26(b)(4)(E). Typically, "time spent in responding to discovery" includes time that the expert spends preparing for the deposition and travel time associated with the deposition. *See Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1136 (E.D. Mo. 1998) (collecting cases). In some cases, it also includes "reasonable fees" related to the review of the deposition transcript for errors. *See*

5

*Ross-Hime Designs, Inc. v. United States*, 124 Fed. Cl. 69, 78 (2015) (stating the such fees are "part and parcel" of time spent responding to discovery). *But see Eclipse Gr. LLP v. Target Corp.*, No. 15-cv-1411, 2017 WL 5885544 *4 (S.D. Cal. Nov. 29, 2017) (identifying cases where courts have concluded that deposition transcript review and correction do not count as time spent responding to discovery). This Court has broad discretion to determine what costs are reasonable. *Hurst v. United States*, 123 F.R.D. 319, 321 (D.S.D. 1988).

Though Plaintiffs indicated at the hearing that they withheld compensation in hopes of compelling Defendants to pay Dr. Heuser's fees, Plaintiffs also identified two issues with the fees charged by Defendants' experts. First, they question the amount of time that each expert spent preparing for his deposition. Second, they question Dr. Rasimas's decision to bill them for time spent reviewing his deposition transcript. Plaintiffs do not, however, contend that the experts' hourly rates are unreasonable. The Court will consider each issue that Plaintiffs identified in turn.

The time that Defendants' experts spent preparing their depositions is reasonable, particularly given the scope and complexity of this matter. As identified in their respective declarations (ECF Nos. 112 & 115), Defendants' experts each spent time reviewing a number of different studies and documents that they cited or prepared, as well as G.C.'s medical records. It is reasonable to assume that a thorough review of this complex scientific literature and medical records would take some time. Defendants billed Plaintiffs for only a few hours of preparation time, which was perfectly reasonable under the circumstances. *See McCulloch v. Hartford Life and Accident Ins. Co.*, No. 01-cv-1115; 2004 WL 2601134

*1-*2 (D. Conn. Nov. 10, 2004) (reducing a claim of over 20 hours of preparation time to two hours); *New York v. Solvent Chem. Co.*, 210 F.R.D. 462, 471-72 (W.D.N.Y. 2002) (reducing preparation time from 17.75 hours to three hours). The Court will therefore order Plaintiffs to compensate Defendants' experts for the time they spent preparing for their depositions.

Whether it is appropriate for Plaintiffs to compensate Dr. Rasimas for the time he spent reviewing his deposition transcript is a closer call. There is disagreement among many different courts as to whether these fees should constitute time spent responding to discovery. Some courts allow for an expert to bill such time, while others do not unless the party seeking discovery required review. *Fulks v. Allstate Prop. & Cas. Co.*, 14-cv-29473, 2016 WL 447628, *2-*4 (S.D. W. Va. Feb. 4, 2016) (noting that if the Court allowed an expert to bill for transcript, it would incentivize review where none was required, thus increasing the cost of litigation for the parties). Neither the Court or the parties have identified any case in this district addressing the issue.

The Court believes that it is appropriate for a party to compensate the other side's expert for time spent reviewing a deposition transcript for error. In reaching this conclusion, the Court finds persuasive the rationale articulated in *Fulks*. *See id*. Expert testimony is important and complex, usually involving technical work that is unfamiliar to a layperson. *Id*. at *3. It is important that expert testimony therefore be accurate so that expert opinions are communicated as clearly as possible for the fact-finder's decision. *Id*. Furthermore, a person seeking to depose another party's expert does so for the purpose of identifying weaknesses in the expert's report for possible impeachment. *Id*. Thus, expert

7

review and verification of the transcript only benefits the opposing party, because it discredits later attempts to disavow the expert's testimony. *Id*.

In addition, the amount of time necessary to review a deposition transcript is typically dictated by the party requesting the deposition. That party is in charge of the deposition's length and thus, the length of the transcript the expert must review. *Id*. In fact, the need to review the deposition transcript would not exist but for the fact that the party noticed the deposition. *Id*. Because the party seeking the discovery is best positioned to control the amount of time the expert will need to review the transcript, the Court believes it appropriate that the same party be responsible for costs associated with review of the transcript.

Finally, any concerns associated with an expert overbilling the other side for review of the transcript can be addressed easily with the proper application of the manifest injustice standard in Rule 26. *Id*. at *4. Courts are well positioned to determine whether the time spent reviewing a transcript is proportional to the transcript's length, complexity of issues, and corrections made by the expert. *Id*. This safeguards adverse expert witnesses from charging excessive fees.

Taking the above factors into consideration, the Court concludes that it is appropriate for Dr. Rasimas to bill Plaintiffs for time spent reviewing his transcript. The Court also concludes that the relatively short amount of time that it took Dr. Rasimas to do so is not unreasonable given the circumstances of this case. As a result, the Court will order Plaintiffs to reimburse both experts in full, in the aggregate amount of $8,791.00.

**B. Motion to Preclude Payment of Plaintiffs' Expert Fees**

Defendants also move for an order stating that they are not required to pay fees associated with Dr. Heuser's deposition testimony. They argue that no reasonable attorney would have disclosed Dr. Heuser as an expert in this case and that Dr. Heuser would have been excluded from evidence following a *Daubert* hearing. Plaintiffs contend that Dr. Heuser's fees were reasonable and that it is appropriate for him to be compensated regardless of the fact that they withdrew him as an expert.

As before, a party is required to pay the fees associated with taking an adverse expert's deposition unless doing so would create a manifest injustice. Fed. R. Civ. P. 26(b)(4)(E). Courts consider several factors to determine whether a fee is reasonable:

> (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographical area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged by the expert to the party who retained him; and (8) fees traditionally charged by the expert on related matters.

*Broushet v. Target Corp.*, 274 F.R.D. 432, 433 (E.D.N.Y. 2011) (quoting *Magee v. Paul Revere Life Ins.*, 172 F.R.D. 627, 645 (E.D.N.Y. 1997)). Previous courts have not required a party to pay any fees associated with the deposition of an expert when the expert was excluded from testifying following a *Daubert* hearing, *see Rogers v. Penland*, 232 F.R.D. 581, 583 (E.D. Tex. 2005) or when payment would cause the party an "undue hardship"

because the party could not afford to pay the deposition fee. *Harris v. San Jose Mercury News, Inc.*, 235 F.R.D. 471, 473-74 (N.D. Cal. 2006).

Having reviewed the above factors, the Court concludes that it would be a manifest injustice for Defendants to pay costs associated with Dr. Heuser's deposition. In reaching this conclusion, the Court has focused heavily on the nature and quality of the discovery responses that Dr. Heuser provided. It is apparent, following review of the portions of the transcript provided by the parties and the declarations submitted by each side, that Dr. Heuser would not be able to provide any value to this litigation. He was unable to recall a number of details related to the way in which he prepared his expert report and his interactions with counsel. Plaintiffs admit that, given Dr. Heuser's frail state and his performance at the deposition, it is no longer feasible to call him as a witness at trial.[4]

In reaching this conclusion, the Court is persuaded in part by the fact that it appears that Plaintiffs' counsel did not make any meaningful effort to communicate with Dr. Heuser following his heart attack, other than to reschedule the deposition. It is expected that parties will prepare their expert for deposition and make sure they can "articulate the conclusion and methodology of the report clearly and effectively." *See Schmidt v. Solis*, 272 F.R.D. 1, 2 (D.D.C. 2010) (stating that any "lawyer worthy of the name" should "prepare an expert for the deposition"). At the hearing, Plaintiffs' counsel indicated that they had only spoken to Dr. Heuser once or twice following the completion of his expert report in April 2018. Had Plaintiffs made a more thorough effort to go through the expert

---

[4] In reaching this conclusion, the Court has placed little weight on the various discrepancies that Defendants identify between Dr. Heuser's report and testimony. Many of the issues that Defendants identified would be more appropriately left for challenging Dr. Heuser's weight and credibility at trial.

10

report with Dr. Heuser prior to the deposition, they likely would have been able in all reasonable likelihood to recognize that Dr. Heuser was no longer a viable witness and would have withdrawn him before Defendants undertook the expense to travel to California for the deposition. It would be a manifest injustice to require Defendants to bear the expense of deposing an expert that Plaintiffs should have known would no longer be helpful or needed in the case. Therefore, the Court will order that Defendants need not pay the deposition fees associated with Dr. Heuser.

**C. Motion For Payment of All Costs Associated with Heuser's Deposition**

Defendants also move for an order compelling Plaintiffs or their counsel to reimburse them for all costs and fees associated with taking the deposition of Dr. Heuser. A court may require counsel to satisfy personally attorneys' fees reasonably incurred by an opposing party when counsel's conduct "multiplies the proceedings in any case unreasonably and vexatiously." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (quoting 28 U.S.C. § 1927). Sanctions are permitted under Section 1927 when an attorney's conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Id.* (citation and internal quotation marks omitted).

The Court also has the inherent authority to order sanctions that are necessary to "achieve the orderly and expeditious resolution of cases." *Vallejo v. Amgen, Inc.*, 903 F.3d 733 (8th Cir. 2018) (citation and internal quotation marks omitted). This includes the authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citation

11

and internal quotation marks omitted). The inherent authority to sanction extends to a full range of litigation abuses and is not displaced by the Federal Rules or any other statute. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). It allows the Court to sanction a party for acting "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 44. The bad faith requirement does not, however, extend "to every possible disciplinary exercise of the court's inherent power." *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993).

In this case, the Court concludes that it is not appropriate to award sanctions related to Dr. Heuser's deposition under either its inherent authority or Section 1927. Though the Court believes that this deposition would not have been necessary had Plaintiffs' counsel acted with more diligence, the Court cannot conclude that Plaintiffs' counsel acted vexatiously or in bad faith by failing to communicate in greater detail with Dr. Heuser regarding his ability to testify in this litigation following his heart attack. Nor can the Court conclude that the failure of Plaintiffs' counsel to communicate further with Dr. Heuser was so reckless or unreasonable as to rise to the level of bad faith necessary to impose sanctions under Section 1927. *See Reliastar Life Ins. Co. v. IOA Re, Inc.*, 303 F.3d 874, 882 (8th Cir. 2002) (concluding bad faith is akin to recklessness in the context of insurance claims). At most, the Court can conclude that the failure to prepare Dr. Heuser adequately and determine whether his health or other factors would allow him to go forward was bad judgment or mere negligence. Neither is sufficient to justify sanctions. *See United States v. Monson*, 636 F.3d 435, 444 (8th Cir. 2011) (concluding, that the bad faith prong of Hyde Amendment requires more than bad judgment or negligence). Accordingly, the Court

declines to order sanctions related to the cost of deposing Dr. Heuser under either its inherent authority or Section 1927.

### D. Motion for Payment of Costs and Fees

Finally, Defendants also ask that the Court order Plaintiffs to reimburse them for their reasonable costs and fees incurred in pursuing this motion. Federal Rule of Civil Procedure 37(a)(5)(A) mandates that if a motion for discovery or disclosure is granted, the Court must require the party or attorney "whose conduct necessitated the motion" to pay the movant's reasonable expenses, including attorney fees. The award of costs and fees is mandatory unless the opposing party's position was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). The Court may also apportion reasonable expenses for the motion if the Court grants the motion in part and denies it in part. Fed. R. Civ. P. 37(a)(5)(C).

Typically, Rule 37(a) sanctions apply only to motions that compel disclosure of discovery. *See* Fed. R. Civ. P. 37(a)(1) (allowing party to move for an order compelling disclosure of discovery). But at least one other court in this district has applied its logic when assessing a request for fees related to motions to compel payment of expert costs. *See, e.g.*, *Smith v. Bradley Pizza, Inc.*, No. 17-cv-2032, 2018 WL 5920626 *10 (D. Minn. 2018). The Court also concludes, since the payment of expert fees for deposition is a discovery-related issue under Rule 26, that it is appropriate to evaluate Defendants' motion under the same framework as it would a motion brought under Rule 37.

In this case, because the Court has granted in part and denied in part the motion to compel payment and for sanctions, the Court may apportion reasonable expenses for the

motion as it sees fit. *See* Fed. R. Civ. P. 37(a)(5)(C). Though the Court finds that Plaintiffs' position regarding Dr. Heuser's fees was substantially justified, the Court does not reach the same conclusion regarding Plaintiffs' decision not to pay Drs. Foster and Rasimas. Plaintiffs delayed resolution of this issue repeatedly by failing to respond to Defendants' requests for clarification for several weeks, only then to request additional information regarding the experts' invoices. Upon receipt of that information, Plaintiffs continued to delay payment, ultimately choosing to issue only a partial payment for the amounts that they deemed reasonable. Though Plaintiffs identified in their memorandum issues they had with the defense expert fees, Counsel for Plaintiffs ultimately admitted at the hearing that he delayed further payment as a negotiating tactic to ensure his own expert was paid. The Court cannot find that position to be substantially justified. The Federal Rules make clear that experts are to be compensated for their time spent responding to discovery unless a manifest injustice would occur. Fed. R. Civ. P. 26(b)(4)(E). They also require the parties to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Though it is fair to assume that a "certain amount of wrangling and negotiating" occurs in the discovery process, the failure to compensate an expert as required by Rule 26 and to demand instead a "*quid pro quo*" arrangement is not in keeping with the obligations, much less the spirit, of Rule 1. *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-644, 2016 WL 4097521 *4 (S.D. Cal. May 26, 2016). Parties should not treat expert fees as a bargaining chip, giving more practical leverage to the often-abused adage of "possession is 9/10ths of the law." Instead, parties should negotiate on the merits of each side's request for expert fees. It is clear from the record here that Plaintiffs delayed

payment for the purpose of getting their own expert compensated. As a result, Defendants were forced to bring this motion to compel payment for their experts. The Court will therefore order Plaintiffs to pay the reasonable attorneys' fees and costs that Defendants incurred in bringing only their motion to compel payment.[5]

### III. CONCLUSION

Therefore, based upon the record, memoranda, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Payment of Experts' Fees and Sanctions (ECF No. 109) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Within 14 days of the date of this order, Plaintiffs shall pay in full the amounts owed to Defendants' experts, as set forth in their respective affidavits in the aggregate amount of $8,791.00 (ECF Nos. 112 & 115). Plaintiffs and their counsel are jointly and severally liable for these amounts;

    b. Defendants are not required to pay fees associated with the deposition of Plaintiffs' expert, Dr. Gunnar Heuser;

    c. Defendants' motion for costs and fees associated with Dr. Heuser's deposition is denied; and

    d. Within 14 days of the date of this order, Defendants shall file an affidavit detailing their costs and fees associated with their motion to compel payment of their fees. Defendants shall not include in their submission any costs or fees related to their motion for an order precluding them from paying Dr. Heuser or related to their motion for payment of costs associated with the deposition of Dr. Heuser. Should Plaintiffs determine it appropriate, they may file a response no later than seven days after Defendants file their submission.[6]

---

[5] Defendants also sought costs and fees related to this motion pursuant to Section 1927 and the Court's inherent authority. The Court would reach the same decision described above if it considered whether costs and fees were appropriate under either authority.

[6] Because the Court finds that Plaintiffs' position regarding the payment of Dr. Heuser's deposition fees was substantially justified, and because Plaintiffs prevailed in the motion for payment of costs that Defendants incurred

15

2.  All prior consistent orders remain in full force and effect.

3.  Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: February 13, 2019                              *s/ Tony N. Leung*
                                                     Tony N. Leung
                                                     United States Magistrate Judge
                                                     District of Minnesota

                                                     *G.C., et al. v. South Washington County School District 833, et al.*

                                                     Case No. 17-cv-3680 (DSD/TNL)

---

with taking the deposition of Dr. Heuser, the Court will not permit Defendants to recover fees and costs related to those issues.